NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (BAILEY), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (BARNETSKY), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (BOWERS), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (FOUSE), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (GANSTER), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (KEMMERER), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (KOCH), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (REICHERT), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (ROGERS), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (SHERIFF), Respondent.

NGK METALS CORPORATION and National Union Fire Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (VITALO), Respondent.

David BAILEY, John Barnetsky, Ronald Bowers, Ronald Fouse, Neil Ganster, Harold Kemmerer, George Koch, William Reichert, Michael Rogers, Russell Sheriff and John Vitalo, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (NGK METALS CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.

Decided Aug. 5, 1997.

R. Burke McLemore, Jr., Harrisburg, for petitioners.

Barbara G. Holmes, Pittsburgh, for respondents.

Before FRIEDMAN and FLAHERTY, JJ., and LORD, Senior Judge.

FLAHERTY, Judge.

David Bailey, John Barnetsky, Ronald Bowers, Ronald Fouse, Neil Ganster, Harold Kemmerer, George Koch, William Reichert, Michael Rogers, Russell Sheriff and John Vitalo (collectively Claimants), Employer NGK Metals Corporation (NGK) and its insurance carrier National Union Fire Insurance Company (National Union) appeal and cross-appeal from the April 18, 1996, decisions and orders of the Workers' Compensation Appeal Board (Board)[1] which reversed the healing periods awarded by the workers' compensation judge (WCJ) but, in the majority of the cases, affirmed the WCJ's decision in all other aspects.[2]

1. Pursuant to the 1996 amendments to Section 107 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 27, the name of the Workmen's Compensation Appeal Board was changed to the Workers' Compensation Appeal Board effective August 23, 1996. *See* Act 57, Act of June 24, 1996, P.L. 801.

2. In the case of Claimant Russell Sheriff, the Board also reversed the WCJ's conclusion that Tokio Marine and Fire Insurance Company (Tokio) was the responsible carrier and found National Union the responsible carrier.

The Claimants work, or worked, in a metals plant which NGK purchased on October 1, 1986. Tokio was NGK's insurance carrier from October 1, 1986, through December 31, 1992. NGK changed carriers, effective January 1, 1993, from Tokio to National Union. All of the Claimants worked for NGK before and after January 1, 1993. On June 16, 1993, the Claimants filed individual claim petitions averring a specific loss of use of hearing was incurred while working for NGK. At hearings before the WCJ, each of the Claimants testified on his own behalf regarding the noise level, amount of exposure and hearing difficulty and presented lay and medical testimony in support of their individual petitions. NGK presented testimony from its plant production manager concerning its takeover of the plant, as well as testimony by medical experts regarding each of the Claimants.

After hearings on the matters, the WCJ found that all of the Claimants sustained specific loss of use of hearing for all practical intents and purposes while working for NGK. In decisions rendered before February 23, 1995,[3] the WCJ awarded the Claimants the statutorily provided 260 weeks for binaural hearing loss under Section 306(c)(8)(I) of the Act, 77 P.S. § 513(8), along with a 10 week healing period provided under Section 306(c)(25) of the Act, 77 P.S. § 513(25).

On appeal, the Board reversed the healing periods awarded to the Claimants. The Board specifically found that the Claimants were either retired or continued to work for NGK at the time the claim petitions were filed and the awards fashioned by the WCJ.[4] As such, regarding the retired Claimants, the Board determined there was no need for a healing period because the record lacked evidence that the retired Claimants intended to return to work. Additionally, the Board determined that the Claimants who continued to work were not entitled to a healing period because they never lost time from work.

In essence, the Board determined that each of the Claimants did not demonstrate a loss of earning power caused by their specific loss of use of hearing. The Board, however, except for determining the insurance carrier for Claimant Sheriff, affirmed the WCJ's decisions in all other aspects.[5] The Claimants appeal, and NGK and National Union cross-appeal, from the Board's decisions and orders. The appeals and cross-appeals were consolidated.

■ The following issues are raised before this court: whether Claimants Fouse, Ganster and Kemmerer failed to timely provide notice of their claims; whether the WCJ erred in relying upon the testimony and opinion of the Claimants' medical expert; whether substantial evidence exists to prove injurious exposure to noise so as to establish causation or injury; whether there was proof of causative exposure after January 1, 1993, when National Union became the carrier, so as to impose liability on National Union; and whether the Board erred in reversing the healing period awarded to each of the Claimants.[6]

## NOTICE

■ NGK argues that Claimants Fouse, Ganster and Kemmerer each failed to timely provide notice of their injury to NGK. Under Section 311 of the Act, 77 P.S. § 631, a claimant must give notice of his or her injury to the employer within 120 days of the injury's occurrence or be forever barred from obtaining compensation for that injury. Whether a claimant has complied with the

---

3. The WCJ's decisions were rendered as follows: Bailey, 1/18/95; Barnetsky, 1/18/95; Bowers, 1/9/95; Fouse, 1/31/95; Ganster, 1/31/95; Kemmerer, 1/31/95; Koch, 12/28/94; Reichert, 1/31/95; Rogers, 1/31/95; Sheriff, 12/21/94; and Vitalo, 1/31/95.

4. The Board determined that Claimants Bailey, Barnetsky, Ganster, Koch, Reichert, Rogers and Sheriff continued to work throughout the pendency of the matter before the WCJ and that Claimants Bowers, Fouse, Kemmerer and Vitalo were retired. Indeed, the record reflects that these four Claimants retired in January of 1993.

5. *See* note 2.

6. Our appellate review in workers' compensation cases, where the Board takes no additional evidence, is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995).

notice requirement under the Act is a question of fact to be determined by the WCJ. *Boeing Helicopter Co. v. Workmen's Compensation Appeal Board (McCanney)*, 157 Pa.Cmwlth. 76, 629 A.2d 184 (1993), *petition for allowance of appeal denied*, 539 Pa. 321, 652 A.2d 796 (1994). NGK avers that these Claimants knew or should have known of their hearing loss prior to the date of diagnosis by their physician. In *Hermanson v. Workmen's Compensation Appeal Board (Kaiser Aluminum)*, 156 Pa.Cmwlth. 556, 628 A.2d 514 (1993) this court upheld the denial of benefits where the claimant knew or should have known of his alleged hearing loss. That case, however, is very fact specific. In *Hermanson*, among other things, the claimant was fully aware of both the extent and cause of his hearing loss at least three years prior to obtaining a medical diagnosis that his loss of use of hearing was complete. Moreover, Hermanson also filed his claim petition before obtaining this medical diagnosis, thus supporting that he knew the extent and cause of the loss.

A claimant's *belief*, without more, that the hearing loss is work-related does not rise to the level necessary to begin the running of the statue of limitations under the Act. Indeed, the "[m]ere knowledge or suspicion of a significant hearing loss and a possible causal relationship with employment . . . is not sufficient evidence of a compensable hearing loss." *Boeing Helicopter* 629 A.2d at 189. Here, none of the Claimants admitted, and the facts of each case do not evidence that prior to their dates of diagnosis, they knew for certain that their hearing loss was of such a degree and was caused by work-related noise exposure. As such, *Hermanson* is factually distinguishable.

In *Boeing Helicopter*, this court held that, for purposes of the statute of limitations periods under the Act, "a hearing loss becomes compensable when a claimant is advised by the doctor that he or she has suffered a complete loss of use of hearing for all practical intents and purposes and that the loss is work-related." *Id.* at 187. Moreover, "[a] complete loss of hearing occurs when an individual is unable to function in usual social, work and familial settings." *Id.* Here, the dates of medical diagnoses as to a complete loss of use of hearing were March 29, 1993, for Ganster and June 10, 1993, for Fouse and Kemmerer. All of the Claimants' petitions were filed in a timely fashion, specifically on June 16, 1993. This evidences that these Claimants also provided timely notice to NGK, that is, within 120 days from the date of diagnosis of the specific loss of use of hearing. As such, the Board was correct in affirming the WCJ's findings that all the Claimants provided timely notice to NGK.

## EVIDENCE AND CREDIBILITY

The WCJ found the testimony of the Claimants' medical expert credible and persuasive that the hearing losses were due to work-related noise exposure, including exposure to loud noise while working for NGK. As this court has consistently held, the WCJ is the ultimate finder of fact, *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa. Cmwlth. 176, 305 A.2d 757 (1973), and the exclusive arbiter of credibility and evidentiary weight. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Therefore, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness presented including that of medical experts. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa. Cmwlth.532, 576 A.2d 421 (1990).

As we stated in *Sellari v. Workmen's Compensation Appeal Board (NGK Metals Corp.)*, 698 A.2d 1372, 1376 (Pa.Cmwlth. 1997), "[t]his court will neither re-weigh evidence nor assert its own determinations of credibility over that of the WCJ. Our review, specifically regarding witness testimony, is simply to ensure that the WCJ's findings of fact have the requisite measure of support in the record." Our review of the records here reveals that substantial evidence exists to prove exposure to noise so as to establish causation and injury in the Claimants' cases. Thus, the Board correctly affirmed the WCJ's findings that each of the Claimants sustained a work-related, binaural specific loss of use of hearing while in the course of their respective employment with NGK.

## RESPONSIBLE CARRIER

■ "Due to the progressive nature of hearing loss from cumulative exposure to noise, it is difficult to isolate the precise moment when a claimant suffers a complete hearing loss for all practical intents and purposes." *Boeing Helicopter* at 187. In *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Taress)*, 143 Pa.Cmwlth. 609, 600 A.2d 626 (1991), this court held that it is the last employer under which a claimant is cumulatively exposed to loud noise that is the responsible party. As the cumulative exposure to loud noise which created the specific loss last occurred while the Claimants were working for NGK when National Union was the carrier, it is the responsible carrier.

■ Moreover, as this court held in *Sellari*, "when an employee has ceased working, the date that must be used to determine calculations for benefits for specific loss of use of hearing is the date of last exposure. This is so because that is the day when the claimant was last exposed to the harm that caused the injury." *Id.* at 1376. Indeed, under such circumstances, it would be repugnant to assign liability to an insurance carrier solely on the basis that it is the carrier on the date of diagnosis and not on the date of last exposure. Therefore, the Board, having found that the Claimants were last cumulatively exposed to loud noise while working for NGK after January 1, 1993, when National Union became the insurance carrier, correctly found National Union to be the responsible carrier regarding all the Claimants.

## HEALING PERIODS

■ The WCJ awarded each of the Claimants not only 260 weeks of benefits for specific loss of use of hearing under Section 306(c)(8)(I) of the Act, but also the maximum healing period provided in Section 306(c)(25) of the Act. As discussed earlier in this opinion, the Board reversed the healing period awards, finding that the Claimants were either retired or missed no time from work

because of the specific loss of use of hearing. Claimants, citing *Sun Oil Co. v. Workmen's Compensation Appeal Board (Davis)*, 144 Pa.Cmwlth. 51, 600 A.2d 684 (1991), argue that the award of a healing period is automatic even when the employee does not return to work.

In *Sellari*, however, this court clarified *Sun Oil* and held that *Sun Oil* stands for the proposition that, while a claimant is entitled to a presumption of entitlement to the award of a healing period when a specific loss is awarded, that presumption is rebuttable. Thus, a claimant does not have the burden to "demonstrate an impairment of earning capacity to qualify for the healing period extension of benefits." *Sun Oil* 600 A.2d at 686. This award of a healing period is not, however, automatic. An employer can present evidence to rebut the presumption of entitlement to the healing period. As we stated in *Sellari*, "[i]t is, however, the employer's burden to present evidence to rebut the presumption of the claimant's entitlement to the proscribed healing period." *Id.* at 1377. Here, however, the Board, ignoring the language of *Sun Oil* that a claimant does not have the burden to "demonstrate an impairment of earning capacity to qualify for the healing period extension of benefits," improperly placed the burden on the Claimants to prove entitlement to the healing periods by establishing a lessening in their earning power. *Id.* at 686.

Therefore, as we did in *Sellari*, in light of our clarification of *Sun Oil* we vacate the WCJ's awards of healing periods to the Claimants and remand to the Board with instructions to remand to the WCJ to allow NGK to present rebuttal evidence with regard to the healing periods and then to make necessary findings of fact and conclusions of law concerning the same.[7]

## SPECIFIC LOSS BENEFITS

■ Finally, as previously noted, the WCJ granted 260 weeks of specific loss bene-

---

7. Although the Board erroneously shifted the burden to the Claimants to prove entitlement to the healing periods, we note that nowhere in the record did any of the Claimants that continued to work raise as an issue that they suffered a lessening in their earning power because of their spe-

cific losses. Additionally, nowhere in the record did any of the retired Claimants raise as an issue that they were forced to retire from NGK because of their work-related specific loss of use of hearing.

fits to Claimants for their complete loss of use of hearing for all practical intents and purposes. As we noted in *Sellari,* our Supreme Court, in the case of *Bible v. Department of Labor and Industry,* —— Pa. ——, 696 A.2d 1149 (1997), recently addressed the 1995 amendments to the Act under Act 1, Act of February 22, 1995, P.L. 1 (Act 1), effective February 23, 1995, as they apply to specific loss of use of hearing benefits.

The *Bible* Court held that Act 1 amended the hearing loss section of the Act and changed the standard for determining specific loss of use of hearing to now provide benefits for permanent partial and total loss of hearing by "multiplying the maximum number of weeks by the percentage of hearing impairment as demonstrated by audiogram testing...." *Id.* at ——, 696 A.2d at 1151.

Additionally, the Court held that Act 1 provided that these changes were intended to apply " 'retroactively to all claims existing as of the effective date of this act *for which compensation has not been paid or awarded.' " Bible* at ——, 696 A.2d at 1149 (citation omitted)(emphasis added). Guidance in the present matter, however, can be found in *Drop v. Workmen's Compensation Appeal Board (U.S. Steel Mining Co.),* —— Pa. ——, 696 A.2d 1157 (1997), a Supreme Court decision filed the same day as *Bible.*

In *Drop,* the claimant was denied specific loss of use of hearing benefits by the WCJ and the Board. While the appeal was pending before this court, Act 1 was enacted. This court subsequently affirmed the Board's denial of benefits. On appeal to the Supreme Court, the parties agreed that the matter fell within the language of Act 1. The employer argued, however, that the claimant waived any argument regarding the retroactive application of Act 1 because it was not first raised on appeal before this court, when Act 1 became effective. Under the circumstances in *Drop,* the Supreme Court stated that strict application of the waiver analysis was inappropriate and held that, as compensation had not been paid or awarded at the time Act 1 became effective, the retroactivity provision of Act 1 made it applicable to the matter on appeal. The *Drop* Court, therefore, remanded the matter to the Board for further proceedings.

Here, as we held in *Sellari,* although *Bible* provides that the Act 1 amendments are to be applied retroactively, under the guidance of *Drop* we hold that *Bible* is not applicable to the present matters and that the Claimants' benefits for specific loss of use of hearing are not affected by the retroactive application of Act 1 because they were awarded prior to February 23, 1995, the effective date of Act 1. Therefore, we affirm the WCJ's awards of 260 weeks of specific loss of use of hearing benefits to the Claimants.

Accordingly, we affirm in part the Board's decision, including that Claimants are each entitled to 260 weeks of specific loss of use of hearing benefits, but vacate the portion of its decision regarding the healing period awards. Moreover, we remand to the Board with instructions to remand to the WCJ solely for the purpose of allowing NGK to present rebuttal evidence in regard to the presumption that Claimants are entitled to healing period awards for their specific loss of use of hearing and to make appropriate findings of fact and conclusions of law thereof.

### ORDER

NOW, August 5, 1997, the April 18, 1996, orders of the Workers' Compensation Appeal Board are affirmed in part, including that portion awarding each of the Claimants 260 weeks of benefits for specific loss of use of hearing. The Board's decisions are vacated, however, regarding the healing periods.

Moreover, we remand to the Board with instructions to remand to the WCJ solely for the purpose of allowing NGK to present rebuttal evidence in regard to the presumption that Claimants are entitled to healing period awards for their specific loss of use of hearing and then to make appropriate findings of fact and conclusions of law thereof.

Jurisdiction relinquished.

LORD, Senior Judge, concurs in the result only.